UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 20-81224-CIV-CANNON/Brannon

**PF SUNSET VIEW, LLC, et al**.

  Plaintiffs,
v.

**ATLANTIC SPECIALTY
INSURANCE COMPANY**,

  Defendant.
_____/

## POST-HEARING ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS MATTER** comes before the Court upon Defendant's Motion for Judgment on the Pleadings ("Motion") [ECF No. 28], filed on November 5, 2020. The Court has considered the Motion, Plaintiff's Response in Opposition [ECF No. 34], Defendant's Reply [ECF No. 39], the full record, and is otherwise fully advised. The Court also held a Hearing on the Motion [ECF No. 55]. For the reasons stated in open court and briefly summarized again below, Defendant's Motion for Judgment on the Pleadings [ECF No. 28] is **GRANTED**.

**I. Procedural History and Relevant Facts**

This case involves claims for insurance coverage arising out of gym closures caused by the COVID-19 pandemic. Plaintiffs own and operate four Planet Fitness gyms in Florida.[1] Plaintiffs allege that Defendant, Atlantic Specialty Insurance Company, unlawfully denied coverage for

---

[1] Although Plaintiffs' four Planet Fitness locations have separate Atlantic Specialty insurance policies, the terms at issue in this dispute are materially identical [ECF No. 1-5, p. 2 n.1]. For the sake of clarity, the Court will refer to these Atlantic Specialty policies collectively in the singular form ("Policy") [ECF No. 1-5, pp. 27–866].

business income losses and extra expenses they incurred as a result of the COVID-19 pandemic and government orders that temporarily closed gyms and fitness centers.

Plaintiffs filed their two-count complaint on May 22, 2020, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, alleging declaratory judgment on coverage and damages for breach of contract [ECF No. 1-5] (*PF Sunset View, LLC et al. v. Atlantic Specialty Ins. Co.*, Palm Beach County Circuit Court (Case No. 2020-CA-005643)). Defendant subsequently removed the action to this court on July 29, 2020 [ECF No. 1]. In the complaint, Plaintiffs seek to represent a class of all policyholders in Florida who suffered loss of business income or incurred extra expenses due to business suspensions related to COVID-19 and for which Defendant denied a claim [ECF No. 1-5, p. 18]

As relevant here, the Policy states that Defendant "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'Operations' during the 'Period of Restoration'" so long as such suspension is caused "by direct physical loss of or damage to" one of the covered properties [ECF No. 1-5, pp. 60, 271, 477, 688]. The Policy further states that Defendant "will pay necessary Extra Expense you incur during the 'Period of Restoration' and the Extended Period of Indemnity that you would not have incurred if there had been no direct physical loss or damage to" one of the covered properties [ECF No. 1-5, pp. 62, 273, 479, 690]. Additionally, the Policy states that Defendant "will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises . . . ." [ECF No. 1-5, pp. 63, 274, 480, 691]. Thus, across all categories of coverage, Plaintiffs must show as a threshold matter "direct physical loss or damage to property."

In the instant Motion, Defendant argues that Plaintiffs' complaint fails to allege any "direct physical loss of or damage to property" as required by the Policy because Plaintiffs' claims do not

allege any physical alteration of the property [ECF No. 28, pp. 13–15]. Defendants argue that the weight of authority compels this interpretation. Plaintiffs argue in response that they in fact have alleged "direct physical loss" within the meaning of the Policy because, in their view, the term "direct physical loss" does not necessarily require physical alteration of the premises [ECF No. 34, pp. 12–16]. Plaintiffs further argue that insurance policies, when ambiguous, are generally construed against the insurer, such that any doubt about coverage should be resolved in their favor [ECF No. 34, pp. 11–12].

## II. Legal Standards

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). All material facts alleged in the non-moving party's pleading are accepted as true and must be viewed in the light most favorable to the non-moving party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

## III. Discussion

The question before the Court is whether the Plaintiffs have met their burden to show that the plain language of the Policy's affirmative grant of coverage—"direct physical loss of or damage to property"—covers their alleged economic losses as a result of COVID-19 and subsequent government shutdown orders. *See, e.g.*, *S.O. Beach Corp. v. Great Am. Ins. Co. of New York*, 305 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir. 2019) ("A plaintiff seeking to recover under an all-risks policy has the burden of proving that a loss

occurred to the insured's property while the policy was in force.") (citing *Egan v. Washington Gen. Ins. Corp.*, 240 So.2d 875, 876 (Fla. Dist. Ct. App. 1970)).

For the following reasons, Plaintiffs have not satisfied that burden.

First, the plain meaning of the terms "direct physical loss of or damage to property" unambiguously requires actual, tangible damage to the physical premises itself, not merely economic losses unaccompanied by a demonstrable physical alteration to the premises itself. The Court incorporates for this point its reasoning in *Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-80749-CIV, 2021 WL 1220750 (S.D. Fla. Mar. 30, 2021), which discusses in detail the plain language of nearly identical policy terms in the COVID-19 context.

Second, the context of the Policy as a whole further supports the requirement of actual, tangible damage to property. The Policy is a commercial property policy that generally covers risks associated with the structure of the covered buildings themselves (in this case, gym buildings). In other words, the commercial property Policy framework suggests the meaning of "direct physical loss" is intended to limit the scope of the Policy's exposure to risks that imperil the physical integrity or structure of the covered buildings. Indeed, the Policy's Definition section lays out five examples of things that constitute "direct physical loss" within the meaning of the Policy[2], and all of those examples clearly require an actual alteration to the physical premises itself [ECF No. 1-5, pp. 98, 309, 515, 726]. Thus, considering the full context of the Policy, it would

---

[2] "Accident" means: a. Direct physical loss as follows: (1) Mechanical breakdown, including rupture or bursting caused by centrifugal force; (2) Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires; (3) Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control; (4) Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or (5) Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

4

strain the plain language beyond its natural meaning to construe "direct physical loss" to encompass risks that are not accompanied by such tangible damage to the premises itself.

Third, the Court is guided by the Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020), *cert. denied*, No. 20-998, 2021 WL 1163753 (U.S. Mar. 29, 2021), which provides helpful guidance in the context of the same critical policy language. Applying Florida law, the Eleventh Circuit affirmed the district court's conclusion that dust and debris that physically intruded into plaintiff's restaurant requiring temporary closures to clean the restaurant on a daily basis did not constitute "direct physical loss of or damage to Covered Property" within the meaning of identical policy language. *Id.* at 879. In so holding, the Eleventh Circuit reasoned that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* (citing *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. Dist. Ct. App. 2017). In other words, analyzing identical policy language under Florida law, the Eleventh Circuit found that a condition affecting a building, even if it is a physical condition, still does not constitute "direct physical loss of or damage to covered property" if it merely requires cleaning rather than something more significant like removal or replacement. *Id.* at 879. That reasoning counsels heavily in favor of the same result here; Plaintiffs are alleging, at most, that COVID-19 particles could have been present in the gyms themselves [ECF No. 1-5 ¶¶54–57, 61–62], but even if that were so, the presence of such undetected particles without any accompanying physical alteration of the premises does not trigger coverage under the policy.

Plaintiffs minimize *Mama Jo's*, arguing, for example, that its reasoning rested more on the fact that the restaurant did not have to suspend operations than on the actual meaning of the terms "direct physical loss of or damage to coverage property." This distinction is unavailing. The Court addressed the plain meaning of the same terms at issue here and concluded that an item that merely

5

needs to be cleaned has not suffered a "loss" which is both "direct" and "physical." *Id.* That reasoning applies equally here. *Id.* at 879. True, the Eleventh Circuit went on to consider whether the district court potentially erred in concluding that the restaurant had not suspended its operations. But the Eleventh Circuit was clear in its assessment that—suspension or not—plaintiffs still could not prevail because they had not shown direct physical loss. *Id.* at 880 ("[E]ven if [plaintiff] is correct that the district court got [the suspension of operations] part of the analysis wrong, [defendant] was still entitled to summary judgment on the Business Income Claim because any 'suspension' must be caused by direct physical loss of or damage to property."). Similarly here, the fact that Plaintiffs had to suspend operations for a period of time does not alleviate Plaintiffs' burden to show such direct physical loss, and they have not. At most, Plaintiffs allege the possible undetected presence of COVID-19 in Plaintiffs' facilities, but that again does not allege any physical loss or damage to the property itself.

Fourth, the Court is persuaded by the dozens of district court decisions across the country, including in Florida, dismissing nearly identical claims for insurance coverage due to COVID-19 related business income losses. *See, e.g., Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *6 (S.D. Fla. Nov. 2, 2020); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-CV-21525-UU, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (collecting cases where "federal district courts throughout the country have dismissed substantially similar COVID-19-related lawsuits for failing to state a claim for business income coverage"). Although the Plaintiffs cite to a few federal and state court victories by insureds in similar cases, the overwhelming weight of authority favors dismissal for claims against insurers for economic losses unaccompanied by an actual, physical alteration to the

premises itself. In sum, under the plain language of the Policy, Plaintiffs must allege actual, physical damage to the premises themselves and have not done so here.

For these reasons, and for the reasons stated in open Court, Defendant's Motion for Judgment on the Pleadings [ECF No. 28] is **GRANTED**. Judgment in favor of Defendants will be entered by separate order.

**DONE AND ORDERED** in Fort Pierce, Florida this 9th day of April 2021.

                                              **AILEEN M. CANNON**
                                              **UNITED STATES DISTRICT JUDGE**

cc:      counsel of record