```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                        FORT PIERCE DIVISION

                   CASE NO. 20-81224-CIV-CANNON


PF SUNSET VIEW LLC,

              Plaintiffs,            FORT PIERCE, FLORIDA
        vs.
                                     APRIL 8, 2021
ATLANTIC SPECIALTY INSURANCE
COMPANY
                                     PAGES 1 - 34
              Defendants.
_____/
```

TRANSCRIPT OF **VIDEO-CONFERENCED** MOTION HEARING

BEFORE THE HONORABLE AILEEN M. CANNON

UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

```
FOR THE PLAINTIFF:      ADAM MARK BALKAN, ESQ.
                        Balkan & Patterson, LLP
                        1877 S. Federal Highway
                        Suite 100
                        Boca Raton, FL  33432
                        TIMOTHY BLOOD, ESQ.

                        THOMAS O'REARDON, ESQ.
                        Blood Hurst & O'Reardon
                        501 West Broadway,
                        Suite 1490
                        San Diego, CA  92101
```

APPEARANCES (cont'd.)


FOR THE DEFENDANT:      CHRISTINE M. RENELLA, ESQ.
                        Zelle LLP
                        1 SE 3rd Avenue
                        Suite 1600
                        Miami, FL  33131

                        DAN MILLEA ESQ.
                        Zelle LLP
                        500 Washington Avenue South
                        Suite 4000
                        Minneapolis, MN  55415

                        PAUL T. SULLIVAN, ESQ.
                        Zelle LLP
                        161 Worcester Road
                        Suite 502
                        Framingham, MA  01701


REPORTED BY:            DIANE M. MILLER, RMR, CRR, CRC
                        Official Court Reporter
                        United States District Court
                        101 South U.S. Highway 1
                        Fort Pierce, FL  34950
                        (772)467-2337
                        diane_miller@flsd.uscourts.gov

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2           THE COURT:  Good morning, Ms. Glass.  Please call the
 3  case.
 4           THE COURTROOM DEPUTY:  Good morning, Your Honor.
 5           Calling case 20-81224 Cannon, PH Sunset View LLC, et
 6  al., versus Atlantic Specialty Insurance Company.
 7           Can we have Counsel state their appearance, beginning
 8  with the plaintiff, please.
 9           MR. BLOOD:  Good morning, Your Honor; Timothy Blood,
10  for the plaintiffs along with Thomas O'Reardon and Adam Balkan.
11           THE COURT:  Good morning, Mr. Blood, Mr. O'Reardon
12  and Mr. Balkan.
13           MR. SULLIVAN:  Christine.
14           MS. RENELLA:  Good morning; Christine Renella on
15  behalf of Atlantic Specialty.  I'm local counsel, and
16  Co-counsel Paul Sullivan is going to be arguing.
17           MR. SULLIVAN:  Good morning, Your Honor; Paul
18  Sullivan from Zelle LLP representing Atlantic Specialty
19  Insurance Company.  Also listening in on the hearing are two of
20  my partners, Dan Millea, and Jim [Unintelligible] from our San
21  Francisco office; additionally Chris Parr and Casey Chase from
22  Intact, which is a parent company of Atlantic Specialty, are
23  listening in on the hearing.
24           THE COURT:  All right, thank you, Mr. Sullivan.  So I
25  take it you are going to be arguing the motion this morning.
```

Thursday, April 8, 2021.

```
1              MR. SULLIVAN:  I am, Your Honor.
2              THE COURT:  Okay.  Who is going to take the lead on
3    behalf of Plaintiffs?
4              MR. BLOOD:  I am, Your Honor.
5              THE COURT:  Excellent, Mr. Blood.
6              Well, good morning, as I said; thank you all for
7    being here.  Please be reminded of the prohibition on recording
8    this proceeding both in audio and video.  Please also do your
9    best to speak as clearly and as slowly as you can for the
10   benefit of our court reporter.  And when you are not on the
11   floor, so to speak, please mute your microphone.
12             With that out of the way, we are here this morning
13   for a motion hearing on Defendant's motion for judgment on the
14   pleadings which appears at docket entry number 28.  That was
15   filed in November 2020 and is fully briefed and ripe for
16   adjudication.
17             So with that, Mr. Sullivan, since it is your motion,
18   why don't you start us off.
19             MR. SULLIVAN:  Thank you, Your Honor.
20             As you noted, the motion before the Court is my
21   client, Atlantic Specialty's motion for judgment on the
22   pleadings.  My client provided commercial property insurance to
23   four different Planet Fitness entities in the State of Florida.
24   Planet Fitness seeks -- these entities seek coverage for their
25   economic losses related to the COVID-19 pandemic under their
```

Thursday, April 8, 2021.

1  commercial property insurance policies.

2          Atlantic Specialty asks this Court to rule as a

3  matter of law Planet Fitness does not state a claim for relief

4  in the complaint because it did not state facts which would

5  meet the threshold requirements of insurance coverage.

6  Specifically, they did not sustain direct physical loss of or

7  damage to property as required to trigger the policies at

8  issue.

9          Unfortunately, the pandemic has had a widespread

10  economic effect throughout the country including the State of

11  Florida.  As a result, the Court has the benefit of a number of

12  orders in this district and around the country that deal with

13  the issues in dispute here.

14          The recent *Carrot Love* decision in January, Judge

15  Scola characterized the decisions on this issue as follows.

16  Judge Scola stated that "The courts have taken the nearly

17  unanimous view that COVID-19 does not cause direct physical

18  loss or damage to property sufficient to trigger coverage under

19  the policy at issue here;" and that is also the case in the --

20  with respect to Planet Fitness's claim, Your Honor.

21          In our papers, we go through a number of decisions in

22  this district, and I'm not going to go through each of them

23  here; however, I would like to take some time to walk the Court

24  through the issues -- the policies at issue in order to explain

25  why those decisions are correctly decided under the policy.

```
1              Pardon me for hoping for some -- I'm going to show a
2    slide.  I just want to see if that slide is on your screen
3    which -- you should have a slide which says "business
4    interruption."
5              THE COURT:  Yes.
6              MR. SULLIVAN:  All right.
7              THE COURT:  Can everybody see the slide?
8              MR. BLOOD:  Yes.
9              THE COURT:  Excellent.
10             And, Mr. Sullivan, did you share this with opposing
11   Counsel prior to today's hearing?
12             MR. SULLIVAN:  I did not and I apologize; however, it
13   is all -- this slide is the business interruption definition
14   from the policy and the period of restoration definition in the
15   policy.  Additionally, the next slide I'm going to use towards
16   the end of the presentation is the civil authority coverage.
17   All of this has been -- were excerpted in the briefs, and of
18   course they are in the policies that were attached to the
19   complaint.
20             THE COURT:  All right.  I will permit the use of the
21   PowerPoint to facilitate this morning's discussion as it is
22   essentially just a reiteration of the applicable policy
23   provisions.
24             MR. SULLIVAN:  And before I refer to the specific
25   slides, Your Honor, the policies that the insurer is making a
```

```
 1  claim under are property insurance policies.  So to the extent
 2  that there was a fire at a Planet Fitness facility, the policy
 3  would provide coverage for the cost to repair the fire damage,
 4  and the coverage -- the policy also provides what is known as
 5  "time element coverage."  And it is called "time element" -- it
 6  was referred to as a "time element coverage" including business
 7  interruption coverage, and the reason that these are referred
 8  to as "time element coverage" is it provides for the loss of
 9  income for the period of time it takes to repair the damaged
10  property.  So to the extent that Planet Fitness sustained a
11  fire loss, there would be -- the business interruption loss
12  coverage would replace their income stream for the period of
13  time it took to repair the fire damage, okay.
14          So specifically, if you look at the business
15  interruption coverage here, you will see those are addressed.
16  In the specific business interruption definition, you will see
17  that the business interruption coverage provides for the actual
18  loss of business income you sustain due to the necessary
19  suspension of operations during the period of restoration.  So
20  there is a causal relationship between there needs to be a
21  demonstrated causal collection between suspension and the
22  actual loss of business income.
23          Additionally, the suspension must be caused by direct
24  physical loss of or damage to property, okay.  So in order for
25  an insured to obtain coverage under the policy, they have to
```

Thursday, April 8, 2021.

1   meet these specific elements:  There needs to be direct

2   physical loss or damage, there needs to be a suspension, and

3   there needs to be a loss resulting from that suspension.

4           And you will note that the period of restoration is

5   defined as was suggested by the example I provided.  It is

6   defined as "the period of time that begins with the date of

7   direct physical loss."  So on the date of the fire when the

8   building is damaged, that's the date that the period of

9   restoration starts.  And then they are entitled to their lost

10  income for the period of time, which is why it is referred to

11  as a "time element coverage," the period of time it takes to

12  repair that property, replace that property with due diligence

13  and dispatch, okay.  So that is the coverage that we are

14  talking about here, Your Honor; and so then I want to compare

15  the example I provided of the fire at the facility with the

16  claims that are being made here by Planet Fitness.

17          Under the policy, there has to be a demonstration of

18  direct physical loss or damage, and there isn't any.  The

19  complaint doesn't even allege that there was any virus on the

20  premises, let alone that there was any actual change to the

21  property brought about by the virus.  And there certainly isn't

22  any allegation in the complaint that there was any time taken

23  to repair any physical damage to the premises because there

24  isn't any.

25          So even when you look at the language in isolation --

Thursday, April 8, 2021.

1   and we will talk about the cases that interpret the direct

2   physical loss or damage provisions in a minute; but even when

3   you look at that direct physical loss or damage language in

4   isolation, it is clear that "virus" just doesn't fall into that

5   category, and there is no trigger.  When you look at it in

6   context, that becomes even more clear because the claim just

7   doesn't make any sense in the context of the policy.

8           The policy provides for the period of time to repair

9   the property and to get their income stream for that period of

10  time, none of that exists in this case.  And again, the

11  complaint doesn't even allege that the virus was present let

12  alone that there was -- that any period of time to, you know,

13  repair or clean the property.

14          In our papers, we rely heavily on the *Mama Jo's*

15  decision from the Eleventh Circuit.  This is not particularly

16  creative lawyering on our part because that same decision has

17  been pointed to in every decision in this district which has

18  made the decision that there isn't direct physical loss

19  sufficient to provide coverage for these types of losses.

20          The facts very briefly of *Mama Jo's* were that this

21  was a Miami restaurant, and there was construction nearby and

22  there was dust on the -- construction dust and debris that made

23  its way into the restaurant that needed to be cleaned

24  regularly.  Mama Jo's made a business interruption claim

25  related to that, and the court very clearly stated that just

1  the mere cleaning of dust does not constitute direct physical

2  damage under Florida law.

3       THE COURT:  Mr. Sullivan, on that point of Florida

4  law, I know the *Mama Jo's* decision cites I think two or maybe

5  more Florida state court decisions on sort of the related

6  definition of similar words.  Do you know of any other Florida

7  court authority that really hones in on the plain meaning of

8  these terms?

9       MR. SULLIVAN:  I don't, but I think that -- I have no

10  reason to believe that *Mama Jo's* isn't an accurate recitation

11  of Florida law, and I would note that in the plaintiff's

12  efforts to try to suggest that *Mama Jo's* got Florida law wrong,

13  the case that they came up with was the *Azalea* case which --

14  you know, which doesn't support their position in any way.

15       So you know, in Plaintiff's brief at nine -- on page

16  nine in their opposition brief, Plaintiff states *Azalea* stands

17  for the proposition that all that is required is the physical

18  presence of something in the covered structure that prohibits

19  operation of the business, and *Azalea* doesn't say that.

20       And I guess I would also point out that statement

21  raises at least two issues.  First, in this particular case,

22  Planet Fitness doesn't even allege there is anything on the

23  premises, right.  So even if that were what *Azalea* said, that

24  wouldn't help them here because the claims are very clearly for

25  economic losses related to COVID rather than any losses related

Thursday, April 8, 2021.

1  to their having to deal with the substance on the premises,

2  okay.  So that's the first issue raised by the statement they

3  made in an effort to support their case of *Azalea*.

4          The second is *Azalea* doesn't say what they say what

5  they represent it says, and there was a specific finding in

6  *Azalea* that there was physical damage to the bacteria colony

7  that they were talking about.  So there is direct physical

8  damage in that particular case.

9          And in referring back again to *Mama Jo's* which has

10  been read in any number of decisions by -- in this district as

11  supporting the position that the presence of virus just doesn't

12  support a finding of direct physical loss or damag*e*.

13          And the -- the other way that -- in their papers that

14  Plaintiff's counsel tries to distinguish -- tries to

15  distinguish the *Mama Jo's* decision is to suggest that the

16  distinction that the Court is making is that in *Mama Jo's*,

17  there was no actual suspension of the operations of the

18  property.  And actually last night, we got a supplemental

19  authority from a decision in Alabama which also cites this *Mama*

20  *Jo's* for that proposition, and I would respectfully submit

21  that -- I agree with the reading of the plaintiff of the case,

22  that the Alabama case does state that *Mama Jo's* reached the

23  decision it did because of the absence of a suspension;

24  however, I would respectfully submit that the Alabama case just

25  gets it wrong.

Thursday, April 8, 2021.

```
 1           And if you review -- even a cursory review of the

 2   Mama Jo's decision demonstrates that there clearly is initial

 3   finding that the -- that the dust and debris does not -- and

 4   the cleaning does not constitute a direct physical loss or

 5   damage sufficient to trigger coverage.  And again, any number

 6   of cases in this district have ruled consistently with that --

 7   with that reading of the case.

 8           In fact, in the Mama Jo's decision on page nine,

 9   there is the discussion, they say, these are -- when they are

10   talking about the cleaning, they are saying, "These are not

11   tangible physical losses but economic losses" which is the

12   exact same situation you have here.

13           And then the next paragraph, the transition paragraph

14   says, "Even if the court were to adopt a more expansive

15   definition of direct physical loss or damage," and then the

16   court goes into the discussion that there is no suspension of

17   operations, okay.

18           So it's clear that Mama Jo's, that the Eleventh

19   Circuit in that decision is saying, look, this just is not a

20   direct physical loss and it is not sufficient to trigger

21   coverage, and that's the same -- and that is the same issue

22   that we are faced with here, Your Honor.

23           THE COURT:  Mr. Sullivan, I'm aware that the Supreme

24   Court recently denied cert in Mama Jo's; is that your

25   understanding?
```

```
 1            MR. SULLIVAN:  That is my understanding.

 2            THE COURT:  Are there any other cases currently

 3  pending at the cert stage before the supreme court that could

 4  concern this issue?

 5            MR. SULLIVAN:  Not that I'm aware of.  That's

 6  something that -- I haven't looked at that level, Your Honor,

 7  but I will take -- we will get back to you on that point.  I

 8  don't believe so.

 9            THE COURT:  So you are not relying on any exclusions

10  in the policies, as I understand it, your argument is strictly

11  with respect to the threshold affirmative grant of coverage.

12            MR. SULLIVAN:  There has to be an order to get to

13  even talk about the exclusions, then you have to meet the

14  threshold requirement for coverage first, and Planet Fitness's

15  claims don't get there based on the allegations in the

16  complaint; so no, we are not relying on any exclusions.

17            And again, in an effort to distinguish the *Mama Jo's*

18  case, Plaintiffs, again they cite *Azalea* which doesn't help.

19  And I would respectfully submit that their characterization of

20  *Mama Jo's* is inaccurate, it is imprecise and refer the Court to

21  the sections of the case that I referred to.

22            And then the rest of the brief is really dedicated

23  and all of the supplementary authority that they pointed to is

24  directed to discussion to what I -- those decisions are

25  outliers.  There are cases out there where there has been
```

```
 1  determination that there is physical damage sufficient; and I
 2  would respectfully submit that, you know, the vast majority of
 3  the cases go the insurer's way.  There are a few that have gone
 4  in the other direction, and I think those cases are just flat
 5  out wrong, and they are wrong for the reasons we already
 6  discussed in terms both in the what the words of the policy
 7  mean and how the coverage works.
 8          THE COURT:  And in Florida courts specifically, are
 9  there any cases in the State of Florida that have ruled in
10  favor of insureds in the context of COVID-19 business
11  interruption cases specifically?
12          MR. SULLIVAN:  I am sure Mr. Blood will correct me.
13  I have one, all right, and there was one order and I can get
14  you the cite for it, but it is an order that denied a motion to
15  dismiss, but however there was -- there was no order in terms
16  of the reasoning of the order that went with it.  It was just a
17  simple state court denial of the motion to dismiss without any
18  explanation.  And I can get --
19          THE COURT:  Mr. Blood, do you have that citation
20  handy?
21          MR. BLOOD:  I don't.
22          Mr. O'Reardon, if you do, feel free to speak up.
23          MR. SULLIVAN:  I think I have got it and if there
24  is -- I'm not trying to sandbag you, I only have one, but
25  it's -- the cite I have got is the case is *Johnston Jewelers*.
```

Thursday, April 8, 2021.

1    THE COURT:  Can you spell that for the court

2  reporter, please.

3    MR. SULLIVAN:  Yeah, J-O-H-N-S-T-O-N, *Jewelers,*

4  J-E-W-E-L-E-R-S, *Inc. versus Jewelers Mutual Insurance Company,*

5  J-E-W-E-L-E-R-S, *Mutual Insurance Company*; and that's just a

6  Westlaw cite, 2020 Westlaw, W-L, 6556842.

7    THE COURT:  So you are saying there is no reasoning

8  that accompanies that order.

9    MR. SULLIVAN:  It was just my -- I don't have it

10  right in front of me.  My notes and recollection are that it

11  was just "motion denied" and that was the end of it.  And I

12  have mentioned too many times already, obviously, there are any

13  number of decisions that go in the direction of making the

14  determination that there is no direct physical loss or damage.

15    THE COURT:  I'm aware of that certainly, though I

16  want to be aware as much as I can of any developments in

17  Florida law specifically, so that's why I ask.

18    Okay, anything further, Mr.  Sullivan, on your

19  argument this morning?

20    MR. SULLIVAN:  Just very briefly, Your Honor.  There

21  also was a claim under the civil authority coverage, and the

22  claims under the civil authority coverage fail for the same

23  reasons and one other.  And the reason with respect to the

24  civil authority coverage, you know, the -- the coverage

25  specifically states that we will pay for the business income

```
 1   loss you sustain caused by action of civil authority that
 2   prohibits access due to direct physical loss or damage to
 3   property other than at the described premises.  So there is
 4   that same requirement of direct physical loss or damage which
 5   is a requirement that the plaintiff can't meet with respect to
 6   their own property or any other.  There is no specific
 7   allegation that there is anything that would constitute direct
 8   physical loss or damage for the same reasons that I have
 9   already articulated.  Unless you have questions on that issue,
10   I'm not going to go into that any further.
11         And the other reason is you have the requirement that
12   the action of civil authority needs to prohibit access, and
13   that isn't what is alleged here.  What is alleged here is that
14   the business -- that business operations ceased, and that is a
15   different issue that prohibition of access.  Was access
16   impacted, yes.  But were the plaintiffs able to access their
17   property, they weren't -- I'm sorry, they were.
18         And there are a couple cases that Mama case out the
19   Florida and Pappy's case which are cited in our papers which
20   support that position that -- what you are talking about again
21   here is a property insurance policy, and so where the only
22   allegations are that there is a suspension of business and not
23   a prohibition of access, that is insufficient to trigger the
24   civil authority coverage provision in the policy.
25         THE COURT:  Would it make any difference to your
```

```
 1  argument if there had been a prohibition on access?
 2          MR. SULLIVAN:  There has to be a causal relationship
 3  to direct physical damage, Your Honor, so I think no because
 4  there has to be the causal relationship; and since there is no
 5  direct physical loss or damage, I don't think there is any
 6  argument that the civil authority coverage here meets all of
 7  the elements of the cover, so no, Your Honor.
 8          THE COURT:  Okay.  Thank you, Mr. Sullivan.
 9          Let's turn now to Plaintiff's Counsel.
10  Mr. O'Reardon, are you going to be taking the lead?  I can't
11  remember if you had volunteered for that.
12          MR. BLOOD:  I will not be taking the lead, Mr. Blood
13  will be.
14          THE COURT:  Okay, excellent, thank you.
15          MR. BLOOD:  So here we have a business interruption
16  and civil authority all risk policy.  An all risk policy is a
17  policy that covers, as the name implies, all risks unless
18  explicitly excluded from the policy.  These types of
19  policies -- not this one, but these types of policies do
20  contain virus and pandemic exclusions.  This policy does not.
21  So the question is:  Does the physical presence of COVID
22  possibly in the gym most likely and certainly all around the
23  gymnasiums render them unsafe for use or the governmental
24  authorities that closed these gyms down and be prevented their
25  use trigger the policies?
```

Thursday, April 8, 2021.

```
1              Now what Atlantic Specialty does is they say, well --
2   and they correctly point to the clause "direct physical loss of
3   or damage to the property," but then they conflate "direct
4   physical loss of and damage to the property."  And they want to
5   read it together, but there is an "or" in between there,
6   "direct physical loss of the property or damage to the
7   property."
8              As Mr. Sullivan argued the issue, you will notice
9   that all of the examples he used were examples where there was
10  damage to the property, and therefore the policy was either
11  triggered or not triggered.  And he avoided the direct physical
12  loss of the property.  In fact, Mama Jo's, which is the case
13  they primarily rely on, never interpreted the physical loss
14  portion of that clause; instead, it only addressed the "damage
15  to" clause.  And of course, Mama Jo's is distinguishable
16  otherwise because unlike the businesses here, Mama Jo's fully
17  operated as normal at full capacity during the time of the
18  alleged loss.  So I don't think Mama Jo's really has many much
19  to do with this case at all.
20             So let's look at what "direct physical loss of the
21  property" means.  There are two types of coverage, as
22  Mr. Sullivan described, the civil authority coverage and the
23  business interruption coverage.  And I think either one is
24  triggered here.  Either the physical presence of COVID
25  prevented the gym from being used which is why people weren't
```

Thursday, April 8, 2021.

1 | using gyms and gyms in particular or -- and a number of cases
2 | have held that in these types of policies, both provisions
3 | apply -- the civil authority, the orders by the government
4 | saying that gymnasiums and similar businesses cannot be used
5 | because of the presence of COVID in the area shut them down.
6 | COVID is obviously something physical.  It prevents the
7 | physical use of the business for its intended purpose.  The
8 | policy would be meaningless if all it meant was, under the
9 | civil authority coverage, you -- if you have access to it,
10 | there is no coverage even though your business is shut down.
11 |        You can have access to all sorts of businesses, but
12 | if you can't run the business, it doesn't do you any good which
13 | is why one has an all risk insurance policy.
14 |        I also disagreed with Mr. Sullivan that there are no
15 | cases that go Plaintiff's way.  In fact, there are many, many
16 | cases that go Plaintiff's way.  About half of the cases issued
17 | by state courts nationwide have gone in favor of plaintiffs,
18 | and something less than half in federal court have gone in
19 | favor of plaintiffs.
20 |        I would direct the Court --
21 |        THE COURT:  I'm not sure, you know, that quite
22 | captures of the state of the law at least in federal court.
23 | But focusing on Florida specifically, other than *Azalea* and
24 | this one other order that was discussed this morning, are you
25 | aware of any other Florida cases besides that perhaps also the

Thursday, April 8, 2021.

1  decisions in *Mama Jo's*?  I know those are not in the COVID

2  context specifically, but trying to focus in on the universe of

3  Florida applicable law, would you add anything to those cases?

4         MR. BLOOD:  I believe there is a Middle District of

5  Florida case.

6         Mr. O'Reardon, do you have the cite right there?  I

7  think you do, if you can grab it.

8         THE COURT:  I think it is a like a urogynecology

9  case, perhaps.

10        MR. O'REARDON:  That's exactly correct,

11 Your Honor.  It's *Urogynocology Specialists versus Sentinel*,

12 489 F. Supp. 3d, 1297, and its --

13        THE COURT:  In that case, there was an issue with the

14 policy wasn't even provided to the court, isn't that right, at

15 the stage at which the court was addressing the question?

16        MR. BLOOD:  Yeah, you know, candidly, it's not -- I

17 think the court may have even commented on the poor briefing by

18 the defense counsel.  So I do agree that there is -- and there

19 is not a lot of cases that are directly -- there are no cases

20 in Florida directly on point other than the state court case

21 and arguably the Middle District of Florida case.  I'm not sure

22 either of those candidly are all that helpful other than by the

23 result reached which is why I think a thorough analysis that

24 was not under Florida law but it was the same policy language

25 is the in the In Re:  Society Insurance Company MDL litigation

Thursday, April 8, 2021.

1  pending in the Northern District of Illinois.  It goes by the

2  name of *Valley Lodge Corporation versus Society*.  I think that

3  is an opinion that is carefully done that reflects our position

4  as well, and the policy language is the same.  Granted that was

5  not decided under Florida law, but it was the same policy

6  language.

7          THE COURT:  And, Mr. Blood, I did note sort of taking

8  the policy in full context, there was a portion that describes

9  some definitions.  I think it's -- defines the terms

10 "accidents" and then it says "direct physical loss as follows."

11 It provides five examples all of which were consistent with an

12 actual tangible alteration of the physical premises itself.

13 How do you deal with that?

14         MR. BLOOD:  Well, I can -- two reasons, one it is an

15 all risk policy, so there are all risk policies that

16 specifically exclude pandemics and viruses, and this one is not

17 one of them.  So by definition, an all risk policy, one errs on

18 the side of covering risk.  But the other one is -- you know,

19 COVID is something physical and is present and causes the

20 dispossession of the property.  The property can't be used for

21 its intended use, and I don't think any of those facts are

22 seriously disputed.

23         THE COURT:  So are you alleging that COVID was

24 physically present in the gyms?

25         MR. BLOOD:  Well, we don't know for sure if it was

Thursday, April 8, 2021.

1   physically present in this gym.  If the gyms were open and

2   people were in there, it would almost certainly be present

3   because it is a pandemic so somebody with COVID would likely

4   have been in the gym with it.  But even if -- I don't think

5   that is a requirement.  Certainly under the civil authority

6   provision, that would not be a requirement.  The whole purpose

7   of the civil authority provision is something is happening

8   outside of the premises and a civil authority shuts down that

9   premises as a result.

10          THE COURT:  But the "something that is happening

11  outside" nonetheless requires, as I understand it by the terms

12  of the policy, you know, physical loss or damage to the

13  property, so I don't know how you get away from that threshold

14  requirement whether you are traveling under either portion of

15  the policy.  But again, than doesn't answer the threshold

16  question which is:  What does physical loss of or damage to

17  property actually mean?

18          MR. BLOOD:  Well, let's take the civil authority

19  example.  So let's say there is a fire nearby, and the fire

20  department comes in and says, I'm shutting down this business,

21  everyone has to leave, you cannot operate this business.  The

22  business is fine, it is standing there, it otherwise would be

23  operable, but either the fire department needs access to the

24  property to fight the other fire or the building is potentially

25  in peril but not actually burning down and physically damaged,

1  that would be civil authority coverage.  The civil authority

2  coverage would be kicked in because of the presence of

3  something else happening nearby and --

4           THE COURT:  Yes, but I'm pretty sure in that context,

5  in the context of an active fire, there really wouldn't be much

6  argument that that neighboring property is not undergoing

7  damage, so to speak.

8           MR. BLOOD:  But again, we are not arguing damage, we

9  are arguing physical loss of.

10           THE COURT:  I take your point there.

11           Mr. Sullivan, how do you deal with that?

12           I have seen some other policies that have just the

13  "loss to property" language and aren't necessarily worded in

14  the disjunctive.  So what is your response to that?

15           You are on mute.

16           MR. SULLIVAN:  I was on a roll with the Zoom, sorry.

17           So the same "direct physical loss of or damage to"

18  language is in *Mama Jo's*.  I think it is in almost all of the

19  decisions that is we have discussed.  The loss still needs to

20  be a physical loss, right?

21           The word "loss" versus "damage" allows for more

22  creative arguments because when you take it out of context, it

23  lends itself to a more expansive definition.

24           In some of the discussions that have reached

25  policyholder result, what they have done is they have strung

Thursday, April 8, 2021.

1   the definitions of "loss," "direct loss" together, and then,

2   you know, they view them in isolation and suggest there is a

3   reasonable argument to be made there.

4        But when you put -- in the English language, you have

5   view words in context, right?  This has to be a direct physical

6   loss or damage, and it has to -- and you have to read that in

7   the context of the policy that provides coverage for the cost

8   to replace stuff.  It would give you money, when you take the

9   time to replace stuff.  In that context, it just isn't

10  reasonable to read that language as providing for all economic

11  losses which you could maybe characterize as physical which is

12  the only way the insured can get there.

13        THE COURT:  All right.

14        Mr. Blood.

15        MR. BLOOD:  Yes, thank you.

16        I would just note that the policy language does not

17  say "physical loss to the property."  It is "physical loss of

18  the property," or, or "damage to the property" because if one

19  reads "physical loss to the property," then it would mean that

20  the -- that the "damage to" provision is really superfluous.

21  They would essentially be saying the same thing.  They are not

22  saying the same thing.  The policy can't be interpreted as

23  saying the same thing.  It is either the physical loss of the

24  property or damage to the property.

25        MR. SULLIVAN:  By the way, if I said that, I

1    misspoke.  I wasn't trying to mischaracterize the language, but

2    I don't think that distinction changes the statement that I

3    made which it still has to be a "direct physical loss of," and

4    it just tortures the language to suggest that this is what this

5    is.

6          I mean, what we have here is an effort -- again, this

7    is a -- has had a dramatic effect on the economy, but it is an

8    attempt to put a square peg in a round hole.  It just doesn't

9    fit within the scope of coverage.

10         THE COURT:  All right, thank you, Mr. Sullivan.

11         Mr. Blood, anything further?

12         MR. BLOOD:  I don't think so, Your Honor.

13         THE COURT:  All right.  I'm going to take five

14    minutes to review a couple of the cases discussed this morning,

15    and I'll be back online, so standby.  It is 10:43, I'll be back

16    no later than 10:50.

17         MR. SULLIVAN:  Thank you, Your Honor.

18         MR. BLOOD:  Thank you, Your Honor.

19     (Break in the proceedings)

20         THE COURT:  All right, thank you everybody.  The

21    Court is back in session.

22         To recap, we are here on defendant's motion for

23    judgment on the pleadings, docket entry 28.  The Court is

24    prepared to rule on that orally at this time, although I will

25    enter a post-hearing order briefly memorializing the reasoning.

Thursday, April 8, 2021.

 1  I don't know if the parties are aware, but I entered a related

 2  order in another case presenting similar circumstances.  It's

 3  docket number 20-Civil-80749, it's Royal Palm Optical versus

 4  State Farm.  In there, I laid out much of what I'll say today;

 5  but essentially, I don't think Plaintiff's reading the plain

 6  language of the policy is supported, and so I do think judgment

 7  in favor of Defendants is warranted.

 8           I guess, first and foremost, the terms "direct

 9  physical loss of or damage to the covered property," at best as

10  I can discern based on the plain meaning of those terms

11  requires actual tangible damage to the premises itself, not

12  strictly economic losses related to or arising out of the

13  property as it operates as a business more generally.

14           I think that reading is supported by the context of

15  the policy as a whole, including the definition of "direct

16  physical loss" on page 41 of docket entry 1-5.  All of the

17  examples provided there are consistent with actual tangible

18  structural damage, so to speak, to the premises itself.  And as

19  I read Plaintiff's complaint, there is nothing there that

20  alleges such physical loss of or damage to the covered

21  property.

22           I'm also guided, of course, by the *Mama Jo's* decision

23  which is helpful; and there, I note the policy language was

24  similarly worded.  It had that disjunctive terminology that is

25  at issue here.

1        I also note the essentially overwhelming authority in

2   the federal courts that have addressed similar or identical

3   policy language and found as a threshold matter that coverage

4   isn't provided.

5        So for those reasons, the Court is going to grant the

6   defendant's motion for judgment on the pleadings.  That I

7   believe will render moot, of course, the other pending motion

8   to certify the class.

9        One final note, I am truly sympathetic to the

10  overwhelming damage that this pandemic and resulting shut-down

11  orders have caused on the business community, but at the end of

12  the day, I'm constrained by the plain terms of the policy.  And

13  respectfully, I think Plaintiff's reading just strains the

14  plain text of the policy beyond its natural meaning.

15       So thank you all for your very helpful advocacy.

16  Please await the Court's order following this hearing.

17       Any questions, Mr. Sullivan?

18       MR. SULLIVAN:  No, Your Honor; thank you.

19       THE COURT:  Mr. Blood?

20       MR. BLOOD:  No, Your Honor; thank you for your time.

21       THE COURT:  Thank you.

22   (PROCEEDINGS ADJOURNED AT 10:54 a.m.)

23

24

25

Thursday, April 8, 2021.

1          C-E-R-T-I-F-I-C-A-T-E

2              I hereby certify that the foregoing is

3       an accurate transcription of digitally recorded

4       proceedings in the above-entitled matter to the

5       best of my abilities.

6              **This hearing occurred during the COVID-19**

7       **pandemic and is therefore subject to the technological**

8       **limitations of reporting remotely.**

9

10    *6/15/2021*              */s/DIANE MILLER*
        DATE                 DIANE MILLER, RMR, CRR
11                           Official Court Reporter
                             United States District Court
12                           101 South U.S. Highway 1
                             Fort Pierce, FL  34950
13                           772-467-2337

14

15

16

17

18

19

20

21

22

23

24

25

Thursday, April 8, 2021.

**MR. BLOOD: [16]** 3/8
4/3 6/7 14/20 17/11
17/14 20/3 20/15 21/13
21/24 22/17 23/7 24/14
25/11 25/17 27/19
**MR. O'REARDON:
[1]** 20/9
**MR. SULLIVAN: [21]**
3/12 3/16 3/25 4/18 6/5
6/11 6/23 10/8 12/25
13/4 13/11 14/11 14/22
15/2 15/8 15/19 17/1
23/15 24/24 25/16 27/17
**MS. RENELLA: [1]**
3/13
**THE COURT: [35]**
**THE COURTROOM
DEPUTY: [1]** 3/3
**/**
**/s/DIANE [1]** 28/10

**0**
**01701 [1]** 2/10

**1**
**1-5 [1]** 26/16
**100 [1]** 1/20
**101 [2]** 2/23 28/12
**10:43 [1]** 25/15
**10:50 [1]** 25/16
**10:54 [1]** 27/22
**1297 [1]** 20/12
**1490 [1]** 1/23
**1600 [1]** 2/4
**161 [1]** 2/9
**1877 [1]** 1/19
**19 [4]** 4/25 5/17 14/10
28/6

**2**
**20-81224 [1]** 3/5
**20-81224-CIV-CANNO
N [1]** 1/3
**20-Civil-80749 [1]** 26/3
**2020 [2]** 4/15 15/6
**2021 [2]** 1/6 28/10
**2337 [2]** 2/24 28/13
**28 [2]** 4/14 25/23

**3**
**33131 [1]** 2/4
**33432 [1]** 1/20
**34 [1]** 1/8
**34950 [2]** 2/24 28/12
**3d [1]** 20/12
**3rd [1]** 2/3

**4**
**4000 [1]** 2/7
**41 [1]** 26/16
**467-2337 [1]** 2/24
**489 [1]** 20/12

**5**
**500 [1]** 2/6
**501 [1]** 1/23
**502 [1]** 2/10
**55415 [1]** 2/7

**6**
**6/15/2021 [1]** 28/10
**6556842 [1]** 15/6

**7**
**772 [1]** 2/24
**772-467-2337 [1]** 28/13

**8**
**80749 [1]** 26/3
**81224 [1]** 3/5

**9**
**92101 [1]** 1/24

**A**
**a.m [1]** 27/22
**abilities [1]** 28/5
**able [1]** 16/16
**about [8]** 8/14 8/21 9/1
11/7 12/10 13/13 16/20
19/16
**above [1]** 28/4
**above-entitled [1]** 28/4
**absence [1]** 11/23
**access [10]** 16/2 16/12
16/15 16/15 16/16 16/23
17/1 19/9 19/11 22/23
**accidents [1]** 21/10
**accompanies [1]** 15/8
**accurate [2]** 10/10 28/3
**action [2]** 16/1 16/12
**active [1]** 23/5
**actual [7]** 7/17 7/22
8/20 11/17 21/12 26/11
26/17
**actually [3]** 11/18 22/17
22/25
**ADAM [2]** 1/18 3/10
**add [1]** 20/3
**additionally [3]** 3/21
6/15 7/23
**addressed [2]** 7/15
18/14 27/2
**addressing [1]** 20/15
**ADJOURNED [1]**
27/22
**adjudication [1]** 4/16
**adopt [1]** 12/14
**advocacy [1]** 27/15
**affirmative [1]** 13/11
**again [9]** 9/10 11/9 12/5
13/17 13/18 16/20 22/15
23/8 25/6
**agree [2]** 11/21 20/18
**AILEEN [1]** 1/13
**al [1]** 3/6
**Alabama [3]** 11/19
11/22 11/24
**all [32]**

**allegation [2]** 8/22 16/7
**allegations [2]** 13/15
16/22
**allege [3]** 8/19 9/11
10/22
**alleged [3]** 16/13 16/13
18/18
**alleges [1]** 26/20
**alleging [1]** 21/23
**allows [1]** 23/21
**almost [2]** 22/2 23/18
**alone [2]** 8/20 9/12
**along [1]** 3/10
**already [3]** 14/5 15/12
16/9
**also [11]** 3/19 4/8 5/19
7/4 10/20 11/19 15/21
19/14 19/25 26/22 27/1
**alteration [1]** 21/12
**although [1]** 25/24
**am [4]** 4/1 4/4 14/12
27/9
**analysis [1]** 20/23
**another [1]** 26/2
**answer [1]** 22/15
**any [29]**
**anything [5]** 10/22
15/18 16/7 20/3 25/11
**apologize [1]** 6/12
**appearance [1]** 3/7
**APPEARANCES [2]**
1/17 2/1
**appears [1]** 4/14
**applicable [2]** 6/22 20/3
**apply [1]** 19/3
**APRIL [1]** 1/6
**are [55]**
**area [1]** 19/5
**aren't [1]** 23/13
**arguably [1]** 20/21
**argued [1]** 18/8
**arguing [4]** 3/16 3/25
23/8 23/9
**argument [6]** 13/10
15/19 17/1 17/6 23/6
24/3
**arguments [1]** 23/22
**arising [1]** 26/12
**around [2]** 5/12 17/22
**articulated [1]** 16/9
**as [37]**
**ask [1]** 15/17
**asks [1]** 5/2
**ATLANTIC [8]** 1/7 3/6
3/15 3/18 3/22 4/21 5/2
18/1
**attached [1]** 6/18
**attempt [1]** 25/8
**audio [1]** 4/8
**authorities [1]** 17/24
**authority [22]** 6/16
10/7 11/19 13/23 15/21
15/22 15/24 16/1 16/12
16/24 17/6 17/16 18/22
19/3 19/9 22/5 22/7 22/8
22/18 23/1 23/1 27/1

**Avenue [2]** 2/3 2/6
**avoided [1]** 18/11
**await [1]** 27/16
**aware [6]** 12/23 13/5
15/15 15/16 19/25 26/1
**away [2]** 22/13
**Azalea [9]** 10/13 10/16
10/19 10/23 11/3 11/4
11/6 13/18 19/23

**B**
**back [5]** 11/9 13/7
25/15 25/15 25/21
**bacteria [1]** 11/6
**BALKAN [4]** 1/18 1/19
3/10 3/12
**based [2]** 13/15 26/10
**be [36]**
**because [13]** 5/4 8/23
9/6 9/16 10/24 11/23
17/3 18/16 19/5 22/3
23/2 23/22 24/18
**becomes [1]** 9/6
**been [6]** 6/17 9/17
11/10 13/25 17/1 22/4
**before [4]** 1/13 4/20
6/24 13/3
**beginning [1]** 3/7
**begins [1]** 8/6
**behalf [2]** 3/15 4/3
**being [3]** 4/7 8/16 18/25
**believe [4]** 10/10 13/8
20/4 27/7
**benefit [2]** 4/10 5/11
**besides [1]** 19/25
**best [3]** 4/9 26/9 28/5
**between [3]** 7/20 7/21
18/5
**beyond [1]** 27/14
**BLOOD [12]** 1/21 1/22
3/9 3/11 4/5 14/12 14/19
17/12 21/7 24/14 25/11
27/19
**Boca [1]** 1/20
**both [3]** 4/8 14/6 19/2
**Break [1]** 25/19
**brief [3]** 10/15 10/16
13/22
**briefed [1]** 4/15
**briefing [1]** 20/17
**briefly [3]** 9/20 15/20
25/25
**briefs [1]** 6/17
**Broadway [1]** 1/23
**brought [1]** 8/21
**building [2]** 8/8 22/24
**burning [1]** 22/25
**business [26]** 6/3 6/13
7/6 7/11 7/14 7/16 7/17
7/18 7/22 9/24 10/19
14/10 15/25 16/14 16/14
16/22 17/15 18/23 19/7
19/10 19/12 22/20 22/21
22/22 26/13 27/11
**businesses [3]** 18/16
19/4 19/11

**C**
**C-E-R-T-I-F-I-C-A-T-
E [1]** 28/1
**CA [1]** 1/24
**call [1]** 3/2
**called [1]** 7/5
**Calling [1]** 3/5
**came [1]** 10/13
**can [12]** 3/7 4/9 6/7
14/13 14/18 15/1 15/16
19/11 20/7 21/14 24/12
26/10
**can't [5]** 16/5 17/10
19/12 21/20 24/22
**candidly [2]** 20/16
20/22
**CANNON [3]** 1/3 1/13
3/5
**cannot [2]** 19/4 22/21
**capacity [1]** 18/17
**captures [1]** 19/22
**carefully [1]** 21/3
**Carrot [1]** 5/14
**case [27]** 1/3 3/3 3/5
5/19 9/10 10/13 10/13
10/21 11/3 11/8 11/21
11/22 11/24 12/7 13/18
13/21 14/25 16/18 16/19
18/12 18/19 20/5 20/9
20/13 20/20 20/21 26/2
**cases [18]** 9/1 12/6 13/2
13/25 14/3 14/4 14/4 14/9
14/11 16/18 19/1 19/15
19/16 19/16 19/25 20/3
20/19 20/19 25/14
**Casey [1]** 3/21
**category [1]** 9/5
**causal [4]** 7/20 7/21
17/2 17/4
**cause [1]** 5/17
**caused [3]** 7/23 16/1
27/11
**causes [1]** 21/19
**ceased [1]** 16/14
**cert [2]** 12/24 13/3
**certainly [5]** 8/21 15/15
17/22 22/2 22/5
**certify [2]** 27/8 28/2
**change [1]** 8/20
**changes [1]** 25/2
**characterization [1]**
13/19
**characterize [1]** 24/11
**characterized [1]** 5/15
**Chase [1]** 3/21
**Chris [1]** 3/21
**CHRISTINE [3]** 2/2
3/13 3/14
**Circuit [2]** 9/15 12/19
**circumstances [1]** 26/2
**citation [1]** 14/19
**cite [5]** 13/18 14/14
14/25 15/6 20/6
**cited [1]** 16/19
**cites [2]** 10/4 11/19

**C**

**CIV [1]** 1/3
**civil [19]** 6/16 15/21 15/22 15/24 16/1 16/12 16/24 17/6 17/16 18/22 19/3 19/9 22/5 22/7 22/8 22/18 23/1 23/1 26/3
**claim [6]** 5/3 5/20 7/1 9/6 9/24 15/21
**claims [4]** 8/16 10/24 13/15 15/22
**class [1]** 27/8
**clause [3]** 18/2 18/14 18/15
**clean [1]** 9/13
**cleaned [1]** 9/23
**cleaning [3]** 10/1 12/4 12/10
**clear [3]** 9/4 9/6 12/18
**clearly [4]** 4/9 9/25 10/24 12/2
**client [2]** 4/21 4/22
**closed [1]** 17/24
**Co [1]** 3/16
**Co-counsel [1]** 3/16
**collection [1]** 7/21
**colony [1]** 11/6
**comes [1]** 22/20
**commented [1]** 20/17
**commercial [2]** 4/22 5/1
**community [1]** 27/11
**company [7]** 1/7 3/6 3/19 3/22 15/4 15/5 20/25
**compare [1]** 8/14
**complaint [7]** 5/4 6/19 8/19 8/22 9/11 13/16 26/19
**concern [1]** 13/4
**CONFERENCED [1]** 1/12
**conflate [1]** 18/3
**consistent [2]** 21/11 26/17
**consistently [1]** 12/6
**constitute [3]** 10/1 12/4 16/7
**constrained [1]** 27/12
**construction [2]** 9/21 9/22
**cont'd [1]** 2/1
**contain [1]** 17/20
**context [12]** 9/6 9/7 14/10 20/2 21/8 23/4 23/5 23/22 24/5 24/7 24/9 26/14
**Corporation [1]** 21/2
**correct [2]** 14/12 20/10
**correctly [2]** 5/25 18/2
**cost [2]** 7/3 24/7
**could [2]** 13/3 24/11
**counsel [7]** 3/7 3/15 3/16 6/11 11/14 17/9 20/18

**country [2]** 5/10 5/12
**couple [2]** 16/18 25/14
**course [4]** 6/18 18/15 26/22 27/7
**court [31]**
**Court's [1]** 27/16
**courts [4]** 5/16 14/8 19/17 27/2
**cover [1]** 17/7
**coverage [38]**
**covered [3]** 10/18 26/9 26/20
**covering [1]** 21/18
**covers [1]** 17/17
**COVID [13]** 4/25 5/17 10/25 14/10 17/21 18/24 19/5 19/6 20/1 21/19 21/23 22/3 28/6
**COVID-19 [4]** 4/25 5/17 14/10 28/6
**CRC [1]** 2/22
**creative [2]** 9/16 23/22
**CRR [2]** 2/22 28/10
**currently [1]** 13/2
**cursory [1]** 12/1

**D**

**damage [43]**
**damaged [3]** 7/9 8/8 22/25
**DAN [2]** 2/5 3/20
**date [4]** 8/6 8/7 8/8 28/10
**day [1]** 27/12
**deal [4]** 5/12 11/1 21/13 23/11
**debris [2]** 9/22 12/3
**decided [2]** 5/25 21/5
**decision [13]** 5/14 19/15 9/16 9/17 9/18 10/4 11/15 11/19 11/23 12/2 12/8 12/19 26/22
**decisions [9]** 5/15 5/21 5/25 10/5 11/10 13/24 15/13 20/1 23/19
**dedicated [1]** 13/22
**DEFENDANT [1]** 2/2
**defendant's [3]** 4/13 25/22 27/6
**Defendants [2]** 1/8 26/7
**defense [1]** 20/18
**defined [2]** 8/5 8/6
**defines [1]** 21/9
**definition [8]** 6/13 6/14 7/16 10/6 12/15 21/17 23/23 26/15
**definitions [2]** 21/9 24/1
**demonstrated [1]** 7/21
**demonstrates [1]** 12/2
**demonstration [1]** 8/17
**denial [1]** 14/17
**denied [3]** 12/24 14/14 15/11
**department [2]** 22/20 22/23

**described [2]** 16/3 18/22
**describes [1]** 21/8
**determination [2]** 14/1 15/14
**developments [1]** 15/16
**diane [4]** 2/22 2/25 28/10 28/10
**did [6]** 5/4 5/6 6/10 6/12 11/23 21/7
**Diego [1]** 1/24
**difference [1]** 16/25
**different [2]** 4/23 16/15
**digitally [1]** 28/3
**diligence [1]** 8/12
**direct [34]**
**directed [1]** 13/24
**direction [2]** 14/4 15/13
**directly [2]** 20/19 20/20
**disagreed [1]** 19/14
**discern [1]** 26/10
**discussed [4]** 14/6 19/24 23/19 25/14
**discussion [4]** 6/21 12/9 12/16 13/24
**discussions [1]** 23/24
**disjunctive [2]** 23/14 26/24
**dismiss [2]** 14/15 14/17
**dispatch [1]** 8/13
**dispossession [1]** 21/20
**dispute [1]** 5/13
**disputed [1]** 21/22
**distinction [2]** 11/16 25/2
**distinguish [3]** 11/14 11/15 13/17
**distinguishable [1]** 18/15
**district [13]** 1/1 1/1 1/14 2/23 5/12 5/22 9/17 11/10 12/6 20/4 20/21 21/1 28/11
**DIVISION [1]** 1/2
**do [13]** 4/8 10/6 14/19 14/22 17/19 18/19 19/12 20/6 20/7 20/18 21/13 23/11 26/6
**docket [4]** 4/14 25/23 26/3 26/16
**does [11]** 5/3 5/17 10/1 11/22 12/3 12/4 17/20 17/21 18/1 22/16 24/16
**doesn't [13]** 8/19 9/4 9/7 9/11 10/14 10/19 10/22 11/4 11/11 13/18 19/12 22/15 25/8
**don't [16]** 4/18 10/9 13/8 13/15 14/21 15/9 17/5 18/18 21/21 21/25 22/4 22/13 25/2 25/12 26/1 26/5
**done [2]** 21/3 23/25
**down [7]** 17/24 19/5 19/10 22/8 22/20 22/25 27/10

**dramatic [1]** 25/7
**due [3]** 7/18 8/12 16/2
**during [3]** 7/19 18/17 28/6
**dust [4]** 9/22 9/22 10/1 12/3

**E**

**each [1]** 5/22
**economic [6]** 4/25 5/10 10/25 12/11 24/10 26/12
**economy [1]** 25/7
**effect [2]** 5/10 25/7
**effort [3]** 11/3 13/17 25/6
**efforts [1]** 10/12
**either [7]** 18/10 18/23 18/24 20/22 22/14 22/23 24/23
**element [5]** 7/5 7/5 7/6 7/8 8/11
**elements [2]** 8/1 17/7
**Eleventh [2]** 9/15 12/18
**else [1]** 23/3
**end [3]** 6/16 15/11 27/11
**English [1]** 24/4
**enter [1]** 25/25
**entered [1]** 26/1
**entities [2]** 4/23 4/24
**entitled [2]** 8/9 28/4
**entry [3]** 4/14 25/23 26/16
**errs [1]** 21/17
**ESQ [6]** 1/18 1/21 1/22 2/2 2/5 2/8
**essentially [4]** 6/22 24/21 26/5 27/1
**et [1]** 3/5
**even [14]** 8/19 8/25 9/2 9/6 9/11 10/22 10/23 12/1 12/14 13/13 19/10 20/14 20/17 22/4
**every [1]** 9/17
**everybody [2]** 6/7 25/20
**everyone [1]** 22/21
**exact [1]** 12/12
**exactly [1]** 20/10
**example [3]** 8/5 8/15 22/19
**examples [4]** 18/9 18/9 21/11 26/17
**excellent [3]** 4/5 6/9 17/14
**excerpted [1]** 6/17
**exclude [1]** 21/16
**excluded [1]** 17/18
**exclusions [4]** 13/9 13/13 13/16 17/20
**exists [1]** 9/10
**expansive [2]** 12/14 23/23
**explain [1]** 5/24
**explanation [1]** 14/18
**explicitly [1]** 17/18

**extent [2]** 7/1 7/10

**F**

**faced [1]** 12/22
**facilitate [1]** 6/21
**facility [1]** 7/2 8/15
**fact [2]** 12/8 18/12 19/15
**facts [3]** 5/4 9/20 21/21
**fail [1]** 15/22
**fall [1]** 9/4
**Farm [1]** 26/4
**favor [4]** 14/10 19/17 19/19 26/7
**federal [4]** 1/19 19/18 19/22 27/2
**feel [1]** 14/22
**few [1]** 14/3
**fight [1]** 22/24
**filed [1]** 4/15
**final [1]** 27/9
**finding [3]** 11/5 11/12 12/3
**fine [1]** 22/22
**fire [11]** 7/2 7/3 7/11 7/13 8/7 8/15 22/19 22/19 22/23 22/24 23/5
**first [4]** 10/21 11/2 13/14 26/8
**fit [1]** 25/9
**Fitness [7]** 4/23 4/24 5/3 7/2 7/10 8/16 10/22
**Fitness's [2]** 5/20 13/14
**five [2]** 21/11 25/13
**FL [4]** 1/20 2/4 2/24 28/12
**flat [1]** 14/4
**floor [1]** 4/11
**FLORIDA [22]** 1/1 1/5 4/23 5/11 10/2 10/3 10/5 10/6 10/11 10/12 14/8 14/9 15/17 16/19 19/23 19/25 20/3 20/5 20/20 20/21 20/24 21/5
**flsd.uscourts.gov [1]** 2/25
**focus [1]** 20/2
**focusing [1]** 19/23
**following [1]** 27/16
**follows [2]** 5/15 21/10
**foregoing [1]** 28/2
**foremost [1]** 26/8
**FORT [4]** 1/2 1/5 2/24 28/12
**found [1]** 27/3
**four [1]** 4/23
**Framingham [1]** 2/10
**Francisco [1]** 3/21
**free [1]** 14/22
**front [1]** 15/10
**full [2]** 18/17 21/8
**fully [2]** 4/15 18/16
**further [3]** 15/18 16/10 25/11

**G**

get [8] 9/9 13/7 13/12
13/15 14/13 14/18 22/13
24/12
gets [1] 11/25
give [1] 24/8
Glass [1] 3/2
go [7] 5/21 5/22 14/3
15/13 16/10 19/15 19/16
goes [2] 12/16 21/11
going [10] 3/16 3/25 4/2
5/22 6/1 6/15 16/10
17/10 25/13 27/5
gone [3] 14/3 19/17
19/18
good [8] 3/2 3/4 3/9
3/11 3/14 3/17 4/6 19/12
got [4] 10/12 11/18
14/23 14/25
government [1] 19/3
governmental [1] 17/23
grab [1] 20/7
grant [2] 13/11 27/5
Granted [1] 21/4
guess [2] 10/20 26/8
guided [1] 26/22
gym [4] 17/22 18/25
22/1 22/4
gymnasiums [2] 17/23
19/4
gyms [5] 17/24 19/1
19/1 21/24 22/1

**H**

had [5] 5/9 17/1 17/11
25/7 26/24
half [2] 19/16 19/18
handy [1] 14/20
happening [3] 22/7
22/10 23/3
has [18] 5/9 5/11 6/17
8/17 9/16 9/17 11/9
13/12 13/25 17/2 17/4
18/18 19/13 22/21 24/5
24/6 25/3 25/7
has to [1] 24/6
have [40]
haven't [1] 13/6
having [1] 11/1
he [2] 18/9 18/11
hearing [8] 1/12 3/19
3/23 4/13 6/11 25/25
27/16 28/6
heavily [1] 9/14
held [1] 19/2
help [2] 10/24 13/18
helpful [3] 20/22 26/23
27/15
here [21] 4/7 4/12 5/13
5/19 5/23 7/15 8/14 8/16
10/24 12/12 12/22 16/13
16/13 16/21 17/6 17/15
18/16 18/24 25/6 25/22
26/25
hereby [1] 28/2

**Highway [3]** 1/19 2/23
28/12
hole [1] 25/8
hones [1] 10/7
Honor [20] 3/4 3/9 3/17
4/1 4/4 4/19 5/20 6/25
8/14 12/22 13/6 15/20
17/3 17/7 20/11 25/12
25/17 25/18 27/18 27/20
HONORABLE [1]
1/13
hoping [1] 6/1
how [4] 14/7 21/13
22/13 23/11
however [4] 5/23 6/12
11/24 14/15
Hurst [1] 1/22

**I**

I'll [3] 25/15 25/15 26/4
I'm [17] 3/15 5/22 6/1
6/15 12/23 13/5 14/24
15/15 16/10 16/17 19/17
20/21 22/20 23/4 25/13
26/22 27/12
identical [1] 27/2
Illinois [1] 21/1
impacted [1] 16/16
implies [1] 17/17
imprecise [1] 13/20
inaccurate [1] 13/20
Inc [1] 15/4
including [3] 5/10 7/6
26/15
income [7] 7/9 7/12
7/18 7/22 8/10 9/9 15/25
initial [1] 12/2
instead [1] 18/14
insufficient [1] 16/23
insurance [12] 1/7 3/6
3/19 4/22 5/1 5/5 7/1
15/4 15/5 16/21 19/13
20/25
insured [2] 7/25 24/12
insureds [1] 14/10
insurer [1] 6/25
insurer's [1] 14/3
Intact [1] 3/22
intended [2] 19/7 21/21
interpret [1] 9/1
interpreted [3] 13/18
24/22
interruption [11] 6/4
6/13 7/7 7/11 7/15 7/16
7/17 9/24 14/11 17/15
18/23
is [134]
isn't [9] 8/18 8/21 8/24
9/18 10/10 16/13 20/14
24/9 27/4
isolation [3] 8/25 9/4
24/2
issue [12] 5/8 5/15 5/19
5/24 11/2 12/21 13/4
16/9 16/15 18/8 20/13
26/25

**issued [1]** 19/16
issues [3] 5/13 5/24
10/21
it [68]
it's [7] 12/18 14/25
20/11 20/16 21/9 26/2
26/3
its [5] 9/23 19/7 20/12
21/21 27/14
itself [4] 21/12 23/23
26/11 26/18

**J**

J-E-W-E-L-E-R-S [2]
15/4 15/5
J-O-H-N-S-T-O-N [1]
15/3
January [1] 5/14
Jewelers [3] 14/25 15/3
15/4
Jim [1] 3/20
Jo's [24] 9/14 9/20 9/24
10/4 10/10 10/12 11/9
11/15 11/16 11/20 11/22
12/2 12/8 12/18 12/24
13/17 13/20 18/12 18/15
18/16 18/18 20/1 23/18
26/22
Johnston [1] 14/25
JUDGE [3] 1/14 5/14
5/16
judgment [5] 4/13 4/21
25/23 26/6 27/6
just [20] 6/2 6/22 9/4
9/6 9/25 11/11 11/24
12/19 14/4 14/16 15/5
15/9 15/11 15/20 23/12
24/9 24/16 25/4 25/8
27/13
just my [1] 15/9

**K**

kicked [1] 23/2
know [16] 9/12 10/4
10/6 10/14 10/15 14/2
15/24 19/21 20/1 20/16
21/18 21/25 22/12 22/13
24/2 26/1
known [1] 7/4

**L**

laid [1] 26/4
language [15] 8/25 9/3
20/24 21/4 21/6 23/13
23/18 24/4 24/10 24/16
25/1 25/4 26/6 26/23
27/3
last [1] 11/18
later [1] 25/16
law [10] 5/3 10/2 10/4
10/11 10/12 15/17 19/22
20/3 20/24 21/5
lawyering [1] 9/16
lead [3] 4/2 17/10 17/12
least [2] 10/21 19/22
leave [1] 22/21

**lends [1]** 23/23
less [1] 19/18
let [2] 8/20 9/11
let's [4] 17/9 18/20
22/18 22/19
level [1] 13/6
like [2] 5/23 20/8
likely [1] 17/22 22/3
limitations [1] 28/8
listening [1] 9/19
litigation [1] 20/25
LLC [2] 1/4 3/5
LLP [5] 1/19 2/3 2/6
2/9 3/18
local [1] 3/15
Lodge [1] 21/2
look [6] 7/14 8/25 9/3
9/5 12/19 18/20
looked [1] 13/6
loss [52]
losses [8] 4/25 9/19
10/25 10/25 12/11 12/11
24/11 26/12
lost [1] 8/9
lot [1] 20/19
Love [1] 5/14

**M**

MA [1] 2/10
made [7] 8/16 9/18 9/22
9/24 11/3 24/3 25/3
majority [1] 14/2
make [2] 9/7 16/25
making [3] 6/25 11/16
15/13
Mama [25] 9/14 9/20
9/24 10/4 10/10 10/12
11/9 11/15 11/16 11/19
11/22 12/2 12/8 12/18
12/24 13/17 13/20 16/18
18/12 18/15 18/16 18/18
20/1 23/18 26/22
many [4] 15/12 18/18
19/15 19/15
MARK [1] 1/18
matter [3] 5/3 27/3 28/4
may [2] 20/17
maybe [2] 10/4 24/11
MDL [1] 20/25
me [3] 6/1 14/12 15/10
mean [4] 14/7 22/17
24/19 25/6
meaning [3] 10/7 26/10
27/14
meaningless [1] 19/8
means [1] 18/21
meant [1] 19/8
meet [4] 5/5 8/1 13/13
16/5
meets [1] 17/6
memorializing [1]
25/25
mentioned [1] 15/12
mere [1] 10/1
Miami [2] 2/4 9/21
microphone [1] 4/11

**Middle [2]** 20/4 20/21
MILLEA [2] 2/5 3/20
miller [4] 2/22 2/25
28/10 28/10
Minneapolis [1] 2/7
minute [1] 9/2
minutes [1] 25/14
mischaracterize [1]
25/1
misspoke [1] 25/1
MN [1] 2/7
money [1] 24/8
moot [1] 27/7
more [6] 9/6 10/5 12/14
23/21 23/23 26/13
morning [12] 3/2 3/4
3/9 3/11 3/14 3/17 3/25
4/6 4/12 15/19 19/24
25/14
morning's [1] 6/21
most [1] 17/22
motion [13] 1/12 3/25
4/13 4/13 4/17 4/20 4/21
14/14 14/17 15/11 25/22
27/6 27/7
Mr [2] 3/12 15/18
Mr. [25] 3/11 3/11 3/24
4/5 4/17 6/10 10/3 12/23
14/12 14/19 14/22 17/8
17/10 17/12 18/8 18/22
19/14 20/6 21/7 23/11
24/14 25/10 25/11 27/17
27/19
Mr. Blood [9] 3/11 4/5
14/12 14/19 17/12 21/7
24/14 25/11 27/19
Mr. O'Reardon [4]
3/11 14/22 17/10 20/6
Mr. Sullivan [3] 3/24
4/17 6/10 10/3 12/23
17/8 18/8 18/22 19/14
23/11 25/10 27/17
Ms [1] 3/2
much [4] 15/16 18/18
23/5 26/4
must [1] 7/23
mute [2] 4/11 23/15
Mutual [2] 15/4 15/5
my [7] 3/20 4/20 4/22
13/1 15/9 15/10 28/5

**N**

name [2] 17/17 21/2
nationwide [1] 19/17
natural [1] 27/14
nearby [3] 9/21 22/19
23/3
nearly [1] 5/16
necessarily [1] 23/13
necessary [1] 7/18
needed [1] 19/2
needs [7] 7/20 8/1 8/2
8/3 16/12 22/23 23/19
neighboring [1] 23/6
never [1] 18/13
next [2] 6/15 12/13

**N**

night [1]  11/18
nine [3]  10/15 10/16 12/8
no [19]  1/3 9/5 10/9 11/17 12/16 13/16 14/15 15/7 15/14 16/6 17/3 17/4 17/7 19/10 19/14 20/19 25/16 27/18 27/20
none [1]  9/10
nonetheless [1]  22/11
normal [1]  18/17
Northern [1]  21/1
not [39]
note [7]  8/4 10/11 21/7 24/16 26/23 27/1 27/9
noted [1]  4/20
notes [1]  15/10
nothing [1]  26/19
notice [1]  18/8
November [1]  4/15
now [2]  17/9 18/1
number [8]  4/14 5/11 5/21 11/10 12/5 15/13 19/1 26/3
number 28 [1]  4/14

**O**

O'REARDON [7]  1/22 1/22 3/10 3/11 14/22 17/10 20/6
obtain [1]  7/25
obviously [2]  15/12 19/6
occurred [1]  28/6
off [1]  4/18
office [1]  3/21
Official [2]  2/22 28/11
okay [9]  4/2 7/13 7/24 8/13 11/2 12/17 15/18 17/8 17/14
one [15]  14/13 14/13 14/24 15/23 17/19 18/23 19/13 19/24 21/14 21/16 21/17 21/17 21/18 24/18 27/9
online [1]  25/15
only [4]  14/24 16/21 18/14 24/12
open [1]  22/1
operable [1]  22/23
operate [1]  22/21
operated [1]  18/17
operates [1]  26/13
operation [1]  10/19
operations [4]  7/19 11/17 12/17 16/14
opinion [1]  21/3
opposing [1]  6/10
opposition [1]  10/16
Optical [1]  8/8
orally [1]  25/24
order [12]  5/24 7/24 13/12 14/13 14/14 14/15 14/16 15/8 19/24 25/25

orders [3]  5/12 19/3 27/11
other [17]  10/6 11/13 13/2 14/4 15/23 16/3 16/6 16/11 19/23 19/24 19/25 20/20 20/22 21/18 22/24 23/12 27/7
otherwise [2]  18/16 22/22
our [7]  3/20 4/10 5/21 9/14 9/16 16/19 21/3
out [8]  4/12 10/20 13/25 14/5 16/18 23/22 26/4 26/12
outliers [1]  13/25
outside [2]  22/8 22/11
overwhelming [2]  27/1 27/10
own [1]  16/6

**P**

P-R-O-C-E-E-D-I-N-G-S [1]  3/1
page [1]  10/15 12/8 26/16
PAGES [1]  1/8
Palm [1]  26/3
pandemic [6]  4/25 5/9 17/20 22/3 27/10 28/7
pandemics [1]  21/16
papers [4]  5/21 9/14 11/13 16/19
Pappy's [1]  15/14
paragraph [2]  12/13 12/13
Pardon [1]  6/1
parent [1]  3/22
Parr [1]  3/21
part [1]  9/16
particular [3]  10/21 11/8 19/1
particularly [1]  9/15
parties [1]  26/1
partners [1]  3/20
Patterson [1]  1/19
PAUL [3]  2/8 3/16 3/17
pay [1]  15/25
peg [1]  25/8
pending [3]  13/3 21/1 27/7
people [2]  18/25 22/2
perhaps [2]  19/25 20/9
peril [1]  22/25
period [12]  6/14 7/9 7/12 7/19 8/4 8/6 8/8 8/10 8/11 9/8 9/9 9/12
permit [1]  6/20
PF [1]  1/4
PH [1]  3/5
physical [54]
physically [3]  21/24 22/1 22/25
PIERCE [4]  1/2 1/5 2/24 28/12
plain [5]  10/7 26/5

26/10 27/12 27/14
plaintiff [5]  1/18 3/8 10/16 11/21 16/15
plaintiff's [9]  10/11 10/15 11/14 17/9 19/15 19/16 26/5 26/19 27/13
plaintiffs [7]  1/5 3/10 4/3 13/18 16/16 19/17 19/19
Planet [9]  4/23 4/24 5/3 5/20 7/2 7/10 8/16 10/22 13/14
pleadings [4]  4/14 4/22 25/23 27/6
please [7]  3/2 3/8 4/7 4/8 4/11 15/2 27/16
point [6]  10/3 10/20 13/7 18/2 20/20 23/10
pointed [2]  9/17 13/23
policies [13]  5/1 5/7 5/24 6/18 6/25 7/1 13/10 17/19 17/19 17/25 19/2 21/15 23/12
policy [40]
policyholder [1]  23/25
poor [1]  20/17
portion [3]  18/14 21/8 22/14
position [6]  10/14 11/11 16/20 21/3
possibly [1]  17/22
post [1]  25/25
post-hearing [1]  25/25
potentially [1]  22/24
PowerPoint [1]  6/21
premises [10]  8/20 8/23 10/23 11/1 16/3 21/12 22/8 22/9 26/11 26/18
prepared [1]  24/3
presence [6]  10/18 11/11 17/21 18/24 19/5 23/2
present [5]  9/11 21/19 21/24 22/1 22/2
presentation [1]  6/16
presenting [1]  26/2
pretty [1]  23/4
prevented [2]  17/24 18/25
prevents [1]  19/6
primarily [1]  18/13
prior [1]  6/11
proceeding [1]  4/8
proceedings [3]  25/19 27/22 28/4
prohibit [1]  16/12
prohibition [4]  4/7 16/15 16/23 17/1
prohibits [2]  10/18 16/2
property [40]
proposition [2]  10/17 11/20
provide [2]  7/3 9/19
provided [6]  4/22 8/5 8/15 20/14 26/17 27/4
provides [6]  7/4 7/8

7/17 9/8 21/11 24/7
providing [1]  24/10
provision [4]  16/24 22/6 22/7 24/20
provisions [3]  6/23 9/2 19/2
purpose [2]  19/7 22/6
put [2]  24/4 25/8

**Q**

question [3]  17/21 20/15 22/16
questions [2]  16/9 27/17
quite [1]  19/21

**R**

raised [1]  11/2
raises [1]  10/21
rather [1]  10/25
Raton [1]  1/20
Re [1]  20/25
reached [1]  11/22 20/23 23/24
read [5]  11/10 18/5 24/6 24/10 26/19
reading [5]  11/21 12/7 26/5 26/14 27/13
reads [1]  24/19
really [5]  10/7 13/22 18/18 23/5 24/20
reason [4]  7/7 10/10 15/23 16/11
reasonable [2]  24/3 24/10
reasoning [3]  14/16 15/7 25/25
reasons [5]  14/5 15/23 16/8 21/14 27/5
recap [1]  25/22
recent [1]  5/14
recently [1]  12/24
recitation [1]  10/10
recollection [1]  15/10
recorded [1]  28/3
recording [1]  4/7
refer [2]  6/24 13/20
referred [4]  7/6 7/7 8/10 13/21
referring [1]  11/9
reflects [1]  21/3
regularly [1]  9/24
reiteration [1]  6/22
related [7]  4/25 9/25 10/5 10/25 10/25 26/1 26/12
relationship [3]  7/20 17/2 17/4
relief [1]  5/3
rely [2]  9/14 18/13
relying [2]  13/9 13/16
remember [1]  17/11
reminded [1]  4/7
remotely [1]  28/8
render [2]  17/23 27/7
RENELLA [2]  2/2 3/14

repair [7]  7/3 7/9 7/13 8/12 8/23 9/8 9/13
replace [4]  7/12 8/12 24/8 24/9
REPORTED [1]  2/22
reporter [4]  2/22 4/10 15/2 28/11
reporting [1]  28/8
represent [1]  11/5
representing [1]  3/18
required [2]  5/7 10/17
requirement [7]  13/14 16/4 16/5 16/11 22/5 22/6 22/14
requirements [1]  5/5
requires [2]  22/11 26/11
respect [4]  5/20 13/11 15/23 16/5
respectfully [5]  11/20 11/24 13/19 14/2 27/13
response [1]  23/14
rest [1]  13/22
restaurant [2]  9/21 9/23
restoration [4]  6/14 7/19 8/4 8/9
result [4]  5/11 20/23 22/9 23/25
resulting [2]  8/3 27/10
review [3]  12/1 12/1 25/14
right [14]  3/24 6/6 6/20 10/23 14/13 15/10 20/6 20/14 23/20 24/5 24/13 25/10 25/13 25/20
ripe [1]  4/15
risk [7]  17/16 17/16 19/13 21/15 21/15 21/17 21/18
risks [1]  17/17
RMR [2]  2/22 28/10
Road [1]  2/9
roll [1]  23/16
round [1]  25/8
Royal [1]  26/3
rule [2]  5/2 25/24
ruled [2]  12/6 14/9
run [1]  19/12

**S**

said [3]  4/6 10/23 24/25
same [14]  9/16 12/12 12/21 12/21 15/22 16/4 16/8 20/24 21/4 21/5 23/17 24/21 24/22 24/23
San [2]  1/24 3/20
sandbag [1]  14/24
say [8]  10/19 11/4 11/4 12/9 18/1 22/19 24/17 26/4
saying [7]  12/10 12/19 15/7 19/4 24/21 24/22 24/23
says [5]  6/3 11/5 12/14 21/10 22/20

**S**

Scola [2]  5/15 5/16
scope [1]  25/9
screen [1]  6/2
SE [1]  2/3
second [1]  11/4
sections [1]  13/21
see [4]  6/2 6/7 7/15 7/16
seek [1]  4/24
seeks [1]  4/24
seen [1]  23/12
sense [1]  9/7
Sentinel [1]  20/11
seriously [1]  21/22
session [1]  25/21
share [1]  6/10
should [1]  6/3
show [1]  6/1
shut [3]  19/5 19/10
27/10
shut-down [1]  27/10
shuts [1]  22/8
shutting [1]  22/20
side [1]  21/18
similar [4]  10/6 19/4
26/2 27/2
similarly [1]  26/24
simple [1]  14/17
since [2]  4/17 17/4
situation [1]  12/12
slide [6]  6/2 6/2 6/3 6/7
6/13 6/15
slides [1]  6/25
slowly [1]  4/9
so [46]
Society [1]  20/25 21/2
some [5]  5/23 6/1 21/9
23/12 23/24
somebody [1]  22/3
something [8]  10/18
13/6 19/6 19/18 21/19
22/7 22/10 23/3
sorry [2]  16/17 23/16
sort [2]  10/5 21/7
sorts [1]  19/11
South [3]  2/6 2/23
28/12
SOUTHERN [1]  1/1
speak [5]  4/9 4/11
14/22 23/7 26/18
Specialists [1]  20/11
SPECIALTY [7]  1/7
3/6 3/15 3/18 3/22 5/2
18/1
Specialty's [1]  4/21
specific [6]  6/24 7/16
8/1 11/5 16/6
specifically [9]  5/6 7/14
14/8 14/11 15/17 15/25
19/23 20/2 21/16
spell [1]  15/1
square [1]  25/8
stage [2]  13/3 20/15
standby [1]  25/15
standing [1]  22/22

stands [1]  10/16
start [1]  4/18
starts [1]  8/9
state [13]  3/7 4/23 5/3
5/4 5/10 10/5 11/22 14/9
14/17 19/17 19/22 20/20
26/4
stated [2]  5/16 9/25
statement [3]  10/20
11/2 25/2
states [6]  1/1 1/14 2/23
10/16 15/25 28/11
still [2]  23/19 25/3
strains [1]  27/13
stream [2]  7/12 9/9
strictly [2]  13/10 26/12
structural [1]  26/18
structure [1]  10/18
strung [1]  23/25
stuff [2]  24/8 24/9
subject [1]  28/7
submit [4]  11/20 11/24
13/19 14/2
substance [1]  11/1
such [1]  26/20
sufficient [5]  5/18 9/19
12/5 12/20 14/1
suggest [4]  10/12 11/15
24/2 25/4
suggested [1]  8/5
Suite [5]  1/20 1/23 2/4
2/7 2/10
SULLIVAN [16]  2/8
3/16 3/18 3/24 4/17 6/10
10/3 12/23 15/18 17/8
18/8 18/22 19/14 23/11
25/10 27/17
SUNSET [2]  1/4 3/5
superfluous [1]  24/20
Supp [1]  20/12
supplemental [1]  11/18
supplementary [1]
13/23
support [4]  10/14 11/3
11/12 16/20
supported [2]  26/6
26/14
supporting [1]  11/11
supreme [2]  12/23 13/3
sure [5]  14/12 19/21
20/21 21/25 23/4
suspension [9]  7/19
7/21 7/23 8/2 8/3 11/17
11/23 12/16 16/22
sustain [3]  5/6 7/18
16/1
sustained [1]  7/10
sympathetic [1]  27/9

**T**

take [9]  3/25 4/2 5/23
13/7 22/18 23/10 23/22
24/8 25/13
taken [2]  5/16 8/22
takes [2]  7/9 8/11
taking [3]  17/10 17/12

21/7
talk [2]  9/1 13/13
talking [4]  8/14 11/7
12/10 16/20
tangible [4]  12/11
21/12 26/11 26/17
technological [1]  28/7
terminology [1]  26/24
terms [8]  10/8 14/6
14/15 21/9 22/11 26/8
26/10 27/12
text [1]  27/14
than [8]  10/25 16/3
19/18 19/23 20/20 20/22
22/15 25/16
thank [14]  3/24 4/6
4/19 17/8 17/14 24/15
25/10 25/17 25/18 25/20
27/15 27/18 27/20 27/21
that [191]
that's [7]  8/8 11/2 12/21
13/5 15/5 15/17 20/10
their [15]  3/7 4/24 4/25
7/12 8/9 9/9 10/14 10/16
11/1 11/3 11/13 13/19
16/6 16/16 17/24
them [6]  5/22 10/24
17/23 19/5 21/17 24/2
then [10]  8/9 8/14 12/13
12/15 13/13 13/22 18/3
21/10 24/1 24/19
there [82]
therefore [2]  18/10
28/7
these [11]  4/24 7/7 8/1
9/19 10/8 12/9 12/10
17/18 17/19 17/24 19/2
they [27]  5/6 6/18 7/25
8/9 10/13 11/2 11/4 11/5
11/7 12/9 12/9 12/10
13/18 13/23 14/5 16/17
16/17 18/1 18/2 18/3
18/4 18/13 23/25 23/25
24/2 24/21 24/21
thing [3]  24/21 24/22
24/23
think [23]  10/4 10/9
14/4 14/23 17/3 17/5
18/18 18/23 20/7 20/8
20/17 20/23 21/2 21/9
21/21 22/4 23/18 25/2
25/12 26/5 26/6 26/14
27/13
this [40]
THOMAS [2]  1/22
3/10
thorough [1]  20/23
those [10]  5/25 7/15
13/24 14/4 20/1 20/3
20/22 21/21 26/10 27/5
though [2]  15/15 19/10
threshold [6]  5/5 13/11
13/14 22/13 22/15 27/3
through [3]  5/21 5/22
5/24
throughout [1]  5/10

time [19]  5/23 7/5 7/5
7/6 7/8 7/9 7/13 8/6
8/10 8/11 8/11 8/22 9/8
9/10 9/12 18/17 24/9
25/24 27/20
times [1]  15/12
TIMOTHY [2]  1/21
3/9
today [1]  26/4
today's [1]  6/11
together [2]  18/5 24/1
too [1]  15/12
took [1]  7/13
tortures [1]  25/4
towards [1]  6/15
TRANSCRIPT [1]  1/12
transcription [1]  28/3
transition [1]  12/13
traveling [1]  22/14
tries [2]  11/14 11/14
trigger [7]  5/7 5/18 9/5
12/5 12/20 16/23 17/25
triggered [3]  18/11
18/11 18/24
truly [1]  27/9
try [1]  10/12
trying [3]  14/24 20/2
25/1
turn [1]  9/19 17/18
two [5]  3/19 10/4 10/21
18/21 21/14
types [5]  9/19 17/18
17/19 18/21 19/2

**U**

U.S [2]  2/23 28/12
unanimous [1]  5/17
under [14]  4/25 5/18
5/25 7/1 7/25 8/17 10/2
15/21 15/22 19/8 20/24
21/5 22/5 22/14
undergoing [1]  23/6
understand [2]  13/10
22/11
understanding [2]
12/25 13/1
Unfortunately [1]  5/9
Unintelligible [1]  3/20
UNITED [4]  1/1 1/14
2/23 28/11
universe [1]  20/2
unless [2]  16/9 17/17
unlike [1]  18/16
unsafe [1]  17/23
up [2]  10/13 14/22
urogynecology [1]  20/8
Urogynocology [1]
20/11
us [1]  4/18
use [6]  6/15 6/20 17/23
19/17 19/7 21/21
used [4]  18/9 18/25
19/4 21/20
using [1]  19/1

**V**

Valley [1]  21/2
vast [1]  14/2
versus [6]  3/6 15/4
20/11 21/2 23/21 26/3
very [5]  9/20 9/25
10/24 15/20 27/15
video [2]  1/12 4/8
VIDEO-CONFERENC
ED [1]  1/12
view [5]  1/4 3/5 5/17
24/2 24/5
virus [6]  8/19 8/21 9/4
9/11 11/11 17/20
viruses [1]  21/16
volunteered [1]  17/11

**W**

W-L [1]  15/6
walk [1]  5/23
want [4]  6/2 8/14 15/16
18/4
warranted [1]  26/7
was [40]
Washington [1]  2/6
wasn't [2]  20/14 25/1
way [9]  4/12 9/23 10/14
11/13 14/3 19/15 19/16
24/12 24/25
we [19]  3/7 4/12 5/21
8/13 9/1 9/14 11/18
12/22 13/7 13/16 14/5
15/25 17/15 21/25 23/8
23/8 23/19 25/6 25/22
well [6]  4/6 18/1 21/4
21/14 21/25 22/18
went [1]  14/16
were [12]  6/17 6/18
9/20 10/23 11/7 12/14
16/16 16/17 18/9 21/11
22/1 22/2
weren't [2]  16/17 18/25
West [1]  1/23
Westlaw [2]  15/6 15/6
what [17]  7/4 10/23
11/4 11/4 13/24 14/6
16/13 16/13 16/20 18/1
18/20 22/16 23/14 23/25
25/4 25/6 26/4
when [9]  4/10 8/7 8/25
9/2 9/5 12/9 23/22 24/4
24/8
where [3]  13/25 16/21
18/9
whether [1]  22/14
which [27]  3/22 4/14
5/4 6/3 6/3 8/10 9/17
10/13 10/14 11/9 11/19
12/11 13/18 16/4 16/19
16/19 18/12 18/25 19/12
20/15 20/23 21/12 21/16
24/11 24/11 25/3 26/23
Who [1]  4/2
whole [2]  22/6 26/15
why [7]  4/18 5/25 8/10

PSC SUNSET VIEW -vs- ATLANTIC SPECIALTY INS. CO.

**W**

**why... [4]** 15/17 18/25
19/13 20/23
**widespread [1]** 5/9
**will [14]** 6/20 7/15 7/16
8/4 9/1 13/7 13/7 14/12
15/25 17/12 17/13 18/8
25/24 27/7
**within [1]** 25/9
**without [1]** 14/17
**Worcester [1]** 2/9
**word [1]** 23/21
**worded [2]** 23/13 26/24
**words [3]** 10/6 14/6
24/5
**works [1]** 14/7
**would [26]** 5/4 5/23 7/3
7/11 7/12 10/11 10/20
11/20 11/24 13/19 14/2
16/7 16/25 19/8 19/20
20/3 22/2 22/3 22/6
22/22 23/1 23/2 24/8
24/16 24/19 24/21
**wouldn't [2]** 10/24 23/5
**wrong [4]** 10/12 11/25
14/5 14/5

**Y**

**Yeah [2]** 15/3 20/16
**yes [5]** 6/5 6/8 16/16
23/4 24/15
**you [82]**
**your [33]**

**Z**

**Zelle [4]** 2/3 2/6 2/9
3/18
**Zoom [1]** 23/16